UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNO SUTTON[1],

       Plaintiff,                   CIVIL ACTION NO. 06-12389

vs.

                                   DISTRICT JUDGE BERNARD FRIEDMAN
                                   MAGISTRATE JUDGE DONALD A. SCHEER

MICHAEL BLOCK, et. al.,

       Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION: Defendants' Motion for Summary Judgment should be GRANTED, as Plaintiff has failed to establish any violations of his federally secured constitutional rights.

\*   \*   \*

Plaintiff is a convicted criminal, incarcerated at the Muskegon Correctional Facility in Muskegon, Michigan. Plaintiff sued the Assistant Deputy Warden (Cook) of the Macomb Correctional Facility (MRF), and four correctional officers employed at the same prison (Block, Yaklyvich, Wellison and Crawford). In a Complaint filed on May 26, 2006, Plaintiff claimed that he was the victim of retaliation, entrapment and assault.

Plaintiff claims that he was retaliated against in three respects: (1) he allegedly was transferred from facility to facility, and subjected to administrative segregation, because he had filed numerous grievances against prison officials; (2) he was entrapped by being

---

[1] Defendants' Motion for Summary Judgment indicates that Arno Sutton's real name is Arnold Patts. For purposes of clarity and consistency, Plaintiff will be referred to as Sutton since that name appears on the docket sheet and all pleadings.

forced to engage in a hazing incident against another inmate (removing his clothing and dragging him into the hallway) as a retaliatory measure; and (3) he was physically assaulted in December 2004, by Defendants Wellison and Crawford while being transported to administrative segregation, and was otherwise treated differently while in segregation than similarly situated inmates. Plaintiff sought compensatory damages, the restoration of good time credits and a transfer to a state prison in Detroit for the duration of his incarceration.

Defendants filed a Motion for Summary Judgment on June 25, 2007, asserting that Plaintiff had failed to establish any violations of his federally secured constitutional rights. Plaintiff filed a response to Defendants' Motion for Summary Judgment on July 19, 2007, arguing to the contrary. For the following reasons, I recommend that Defendants' motion be GRANTED.

STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. FED. R. CIV. P. 12(b)(6); see Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). "Dismissal of a complaint for the failure to state a claim upon which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 1997).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. Covington v. Knox County Sch. Sys., 205 F.3d 912, 914 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. Id. A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits. Ashbook v. Block, 917 F.2d 918, 921 (6th Cir. 1990); see also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

DISCUSSION

To establish a valid claim under § 1983, a plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights privileges or immunities secured by the Constitution or laws of the United States. See West v. Atkins, 487 U.S. 42, 49 (1988). Here, Defendants do not dispute that they acted under color of state law. Accordingly, I will focus on the alleged constitutional deprivations.

RETALIATION CLAIM

There are two categories of retaliation claims--general claims of retaliation and claims that allege that an individual was retaliated against for the exercise of specific

constitutional rights. In Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1989) the Sixth Circuit clarified the elements of each category and supplanted previous cases that had blurred the lines between the two. General claims of retaliation are brought under the Due Process Clause of the Fourteenth Amendment. To state a successful case of general retaliation, a prisoner must establish "an egregious abuse of governmental power" or behavior that "shocks the conscience." Id. at 387. In the great majority of cases, inmates are unable to survive summary judgment under this demanding standard. The rare exceptions have been in cases where, for example, a prison official issued death threats against an inmate while holding a cocked pistol at his head, or where prison officials trumped up false disciplinary charges against an inmate and then proceeded to physically abuse him and levy harsh disciplinary sanctions against him. See Cale v. Johnson, 861 F.2d 943, 950-51 (6th Cir. 1988) (citing cases).

The second category of retaliation claims involves allegations that state officials penalized an individual for the exercise of a specific constitutional right. In such cases, an inmate bears a lesser burden, and is only required to establish the following three elements: (1) the inmate engaged in protected conduct, (2) an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated, at least in part, by the inmate's protected conduct. Thaddeus-X, 175 F.3d at 394-395. Plaintiff has the burden of proving all three elements.

Even if it is assumed, without deciding, that Plaintiff satisfied the first two elements listed above, he has failed to allege sufficient facts that establish the third. He must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). He has done nothing more than simply allege retaliation without establishing a causal connection. See Thaddeus-X, 175 F.3d at 399-400.

RETALIATION IN THE FORM OF PRISON TRANSFER

Plaintiff asserts that his security classification was increased after his transfer from MRF to the Standish Correctional Facility in November 2004, allegedly in retaliation for filing a grievance against defendants following the hazing incident. A prisoner has no independent constitutional right to confinement in a particular place, Olim v. Wakinekona, 461 U.S. at 245, and has no right to be transferred to a prison facility of his choice. Hewitt v. Helms, 459 U.S. at 468 (transfer of an inmate to less amendable and more restrictive quarters is well within the terms of confinement ordinarily contemplated by a prison sentence); Newell v. Brown, 981 F.2d 880 (6th Cir. 1992) (MDOC procedures for prisoner security classification did not create a constitutionally protected liberty interest).

Due process does not require that a prisoner be given a hearing before a placement or classification change is ordered, even if such action might result in confinement under less desirable or favorable conditions. Meachum v. Fano, 427 U.S. 215, 224-225 (1976); Montayne v. Haymes, 427 U.S. 236, 242 (1976). Plaintiff has identified no state created, protected liberty interest entitling him to a hearing to challenge his security classification or transfer to another correctional facility. Hewitt v. Helms, 459 U.S. 460, 466 (1983).

Even if there were a due process right to a hearing before Plaintiff was classified to a higher level of custody, in damage suits for deprivation of liberty without procedural due process under § 1983, the claimant has the burden of pleading and proving the inadequacy of state remedies to redress the alleged wrong. Vicory v. Walton, 721 F.2d 1062, 1064 (6th

Cir. 1983); Wilson v. Beebe, 770 F.2d 578, 584 (6th Cir. 1985) (en banc); Wells v. Brown, 891 F.2d 591, fn. 1 (6th Cir. 1989). This Plaintiff has not done so.

Defendant Thomas Crawford, a Sergeant employed at MRF, avers that Plaintiff's transfer to Standish Correctional Facility in November 2004 was a routine, lateral transfer that was made to temporary relieve overcrowding at MRF. (See affidavit of Defendant Crawford, attached as Exhibit G to Defendants' Motion for Summary Judgment). All Plaintiff has shown is that he was transferred to Standish, coupled with the fact that he had previously filed a grievance against the MRF staff concerning the hazing incident. From that he jumps to the conclusion that what the Defendants did was because of his prior litigation. However, speculation is no substitute for hard evidence. Since Plaintiff has failed to produce evidence that his filing of prison grievances was a substantial or motivating factor behind his treatment, I am persuaded that Defendants are entitled to a summary judgment on his claim of retaliation in connection with his transfer and security classification.

RETALIATION IN THE FORM OF SEGREGATION

Following his transfer back to MRF in December 2004, Plaintiff alleges that Defendants retaliated against him for filing previous grievances by falsely accusing him of instigating the hazing incident, and then segregating him from the general prison population. He asserts that he remained in administrative segregation longer than other similarly situated prisoners, who were allegedly released back into the general population.

Contrary to Plaintiff's assertion, the cell transfer to administrative segregation was not retaliatory, but was intended to separate him from the general prison population during the course of the investigation into the hazing incident (See Step III grievance attached as

6

Exhibit C to Defendants' Motion for Summary Judgment). The Supreme Court has held that an inmate may be placed in "nonpunitive" (administrative) segregation to safeguard institutional security or to conduct an investigation of unresolved misconduct charges without invoking the Wolff[2] due process procedures. Hewitt v. Helms, 459 U.S. 460, 473 (1983); Woodson v. Lack, 865 F.2d 107, 109 (6th Cir. 1989). The decision to place Plaintiff in administrative segregation, pending the completion of an investigation, does not give rise to a cause of action.

Plaintiff also suggests that his equal protection rights were violated because other prisoners in administrative segregation allegedly received preferential conditions of confinement. To establish a violation of the Equal Protection Clause, an inmate must show that the prison officials purposefully discriminated against him. Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265 (1977); Copeland v. Machulis, 57 F.3d 476, 480 (6th Cir. 1995). Such discriminatory purpose must be a motivating factor in the actions of defendants. Arlington Heights, at 265-266.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court determined that prison regulations concerning confinement of an inmate did not create a liberty interest. In making its decision, the Court did not rely on the language of the regulations for mandatory terminology and substantive predicates. Id. at 485; cf. Hewitt v. Helms, 459 U.S. 460, 471-72 (1983). Rather, the Court focused on the particular restraint imposed and held that it "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, Id. at 485. Based on the Supreme Court's holding in Sandin, I am persuaded that there is no liberty interest at issue entitling

---

[2]Wolff v. McDonnell, 418 U.S. 539, 563-566 (1974).

**7**

Plaintiff to procedural protection as a result of his administrative segregation status. Moreover, the special security needed to supervise those prisoners in higher levels of custody will necessarily result in fewer privileges for them than those normally provided to general population inmates. See Allgood v. Morris, 777 F.2d 1250, 1256 (4th Cir. 1984).

A prisoner has no right to be classified to any particular security level, Olim v. Wakinekona, 461 U.S. 238, 245 (1983), or to remain free of administrative segregation. Mackey v. Dyke, 111 F.3d 460, 462 (6th Cir. 1997). Notwithstanding the discomfort Plaintiff may have experienced as a normal consequence of his lockdown status, I am not persuaded that his due process (liberty interest) rights were violated.

ASSAULT AND BATTERY

Claims of excessive force against convicted prisoners by prison guards are to be raised and analyzed exclusively under the Eighth Amendment's cruel and unusual punishment clause. Cornwell v. Dahlberg, 963 F.2d 912, 915-916 (6th Cir. 1992). In Whitley v. Albers, 475 U.S. 312 (1986), the Supreme Court held that what is necessary to establish unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. 475 U.S. at p. 320. It concluded that, in a prison disturbance situation:

> [T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

475 U.S. at pp. 320-321.

In the instant case, Plaintiff has failed to demonstrate that Defendants Wellison or Crawford acted in such a way that their conduct while transporting him to administrative

**8**

segregation in December 2004, could be characterized as obdurate or wanton. An investigation into the alleged assault was performed by MRF prison authorities shortly after the incident. In a memorandum dated February 5, 2005, Inspector Kraft stated that he could find no evidence corroborating Plaintiff allegation that an assault had taken place (See Memorandum attached to Defendants' Motion for Summary Judgment as Exhibit F). In separate attached affidavits, Defendants Wellison and Crawford both denied ever assaulting Plaintiff (See affidavits attached as Exhibits G and H).

The lack of any evidence that Plaintiff suffered any permanent or severe injuries as a result of being assaulted suggests that reasonable force was applied. I am persuaded that Plaintiff's bare allegations are insufficient to create a triable issue of fact that Defendants Wellison and Crawford exhibited a deliberate indifference to a risk of injury while transporting him to administrative segregation.

<u>MENTAL ANGUISH</u>

Plaintiff seeks compensatory damages due the to mental anguish he suffered as a result of the defendants' alleged retaliatory conduct. He specifically mentions that he has suffered "many deplorable actions", and was wrongfully denied good time credits regarding his sentence, as a result of the defendants' conduct.

The Prison Litigation Reform Act specifically prohibits monetary damages solely for emotional distress.

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a showing of physical injury.
>
> 42 U.S.C. § 1997e(e)

The Complaint alleges only emotional injuries stemming from the defendants' alleged misconduct. Since Plaintiff has not alleged any physical injuries, his claim for monetary damages is barred by § 1997e(e).

Any allegation against supervisory officials within the prison system based upon their responsibility for his prison transfer and placement in administrative segregation are frivolous and fail to state a claim because Plaintiff is attempting to sue these individuals under a *respondeat superior* theory of liability. "Respondeat superior or vicarious liability will not attach under § 1983." Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). Additionally, the doctrine of immunity would dictate that no monetary damages would be recoverable against the Defendants without a more definite showing of personal involvement. Poe v. Hayden, 853 F.2d 418, 423 (6th Cir. 1988). Having neither suffered nor alleged a remediable harm, Plaintiff has failed to allege a compensable constitutional violation.

REQUEST FOR INJUNCTIVE RELIEF

Plaintiff requests that good time credits be restored to his MDOC file, and he seeks a transfer to a Level I prison facility in Detroit. Since Plaintiff was found guilty of misconduct following the hazing incident (See Response to Grievance #160383 attached to Defendants' Motion for Summary Judgment as Exhibit C), he is not entitled to have his security level lowered or his credits restored. Any other claim for injunctive relief is moot in light of Plaintiff's transfer out of the MRF in June 2007. When a Plaintiff is no longer incarcerated in the institution where the alleged violations occurred, injunctive relief is no longer needed and therefore must be denied as moot. See Washington v. James, 782 F.2d 1134, 1137 (2d Cir. 1986) (noting that prisoner cannot maintain Section 1983 action

for injunctive relief when he is no longer incarcerated where alleged violations occurred). Plaintiff is now incarcerated at the Muskegon Correctional Facility in Muskegon, Michigan. Injunctive and declaratory relief is not available to Plaintiff for claims involving any other prison.

For the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment be granted and the instant case be dismissed. Given this recommendation, Plaintiff's separate Motions for Appointment of Counsel (Docket #6 & 28), Motion for a Prison Transfer (Docket #20), Motion Requesting the Transfer of Assets (Docket #21) and Motion for a Restraining Order (Docket #22) should be denied.

The parties are advised that any objections to this Report and Recommendation must be filed with the Court within ten (10) days after they are served with a copy, or further appeal from Judge Friedman' s acceptance thereof is waived.

s/Donald A. Scheer
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE

DATED: September 10, 2007

_____

**CERTIFICATE OF SERVICE**

I hereby certify on September 10, 2007 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on September 10, 2007. **Arno Sutton.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217